IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

JUL 2 3 1998

Michael N. Milby, Clerk of Court

| | |
|---|---|
| WILLIE TERION WASHINGTON, § | |
| § | |
| Petitioner, § | |
| § | |
| § | |
| -VS- § | ~~CIVIL ACTION~~ NO. H-98-085 |
| § | Misc. |
| § | |
| § | |
| GARY JOHNSON, Director, Texas § | |
| Department of Criminal Justice, § | |
| Institutional Division, § | |
| § | |
| Respondent. § | |

**MOTION FOR LEAVE TO PROCEED *EX PARTE* ON REQUESTS FOR INVESTIGATIVE
AND EXPERT ASSISTANCE**

TO THE HONORABLE DAVID HITTNER:

In an accompanying motion/s, Petitioner Willie Terion Washington asks this Court, pursuant to 21

U.S.C. § 848(q)(9) and *McFarland v. Scott*, 512 U.S. 849 (1994), to appoint investigators and/or expert

witnesses to assist counsel in the preparation of his initial petition for writ of habeas corpus. Formerly,

such motions were routinely heard *ex parte* in federal habeas proceedings. The Antiterrorism and Effective

Death Penalty Act of 1996 revised the federal appointment statutes to require a "proper showing . . . of the

need for confidentiality" in investigative and expert requests in federal habeas proceedings. 21 U.S.C. §

848(q)(9) (Supp. 1996). Mr. Washington will demonstrate that allowing him to proceed *ex parte* is

consistent with the language of the AEDPA and appropriate in this case.

I.      Requested procedures for determining this Motion.

The requirement that Mr. Washington make a "proper showing of the need for confidentiality"

before being allowed to proceed *ex parte* raises a difficult question whose answer is not provided by the

1



statute: How is the petitioner to demonstrate the need for confidentiality without revealing the information he believes should be protected?  The few federal district courts which have interpreted this novel statute (see below) have recognized that the fact that a habeas corpus petitioner is no longer entitled to proceed *ex parte* as a matter of right creates a Catch-22.  If the Petitioner carefully strips his request for an investigator of any sensitive information (because he is not guaranteed that the request will remain confidential), he may not be able to make the required showing of the need for confidentiality.  If, on the other hand, he reveals attorney work product and other sensitive information in his request for an investigator, he risks the revelation of that information to counsel for the Respondent if he is ultimately denied permission to proceed *ex parte*.

Mr. Washington urges this Court to follow the example of a majority of district courts which have interpreted the amendments to § 848(q)(9), and permit *ex parte* proceedings on his requests for investigative and/or expert services.  Nevertheless, in the event that Mr. Washington does not prevail on this point, he has structured his pleadings to minimize any adverse impact on his client's interests.  Mr. Washington has filed this Motion seeking authorization to proceed *ex parte* simultaneously with his motions for investigative and/or expert services.  This motion has been served upon the Respondent, but any accompanying motions for the assistance of investigators or other services have been filed under seal. This Motion contains general legal arguments concerning the advisability of permitting Mr. Washington's motion for an investigator to be heard *ex parte*, and the traditional policy arguments in favor of permitting indigent criminal defendants to proceed *ex parte* in making investigative and expert requests.  The motions for investigative and/or expert services contain privileged attorney work product and other sensitive information.  They have been filed simultaneously with this Motion in order to demonstrate that Mr. Washington's substantive requests for investigative and expert assistance do indeed contain information that merits their being heard *ex parte*.  If this Court elects not to permit proceedings in order to obtain an investigator to be conducted *ex parte*, the Petitioner respectfully requests that this Court **permit Mr.**

2

Washington to withdraw any motions for investigative and/or expert services that have been filed simultaneously with this Motion, and to permit him to re-file revised motions which protect sensitive information.

**II.      Showing of need for confidentiality.**

      **A.      The revisions to the appointment statute.**

Section 848(q)(9) governs the appointment of investigators and experts in federal habeas corpus actions attacking state-imposed death sentences.  It now provides that:

> Upon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses therefor under paragraph (10).  No ex parte proceeding, communication, or request may be considered pursuant to this section unless a proper showing is made concerning the need for confidentiality.  Any such proceeding, communication, or request shall be transcribed and made a part of the record available for appellate review.

21 U.S.C.§§ 848(q)(9) (Supp. 1996).  Before its amendment by § 903 of the Antiterrorism and Effective Death Penalty Act of 1996 ("the Antiterrorism Act"), this section provided as a matter of course that the proceedings related to the appointment of investigators or experts for the defense would be *ex parte*.  21 U.S.C. § 848(q)(9) (1994) ("Upon a finding in *ex parte* proceedings that investigative, expert, or other services are reasonably necessary....") (emphasis added).

Mr. Washington can demonstrate sufficient reasons for the accompanying motions for investigative and/or expert assistance to be heard *ex parte* rather than upon notice.  The arguments and assertions made in the accompanying motions incorporate conversations undersigned counsel and associates have had which are protected by the attorney-client privilege.  These conversations include those with the client and persons associated with Mr. Washington's representation in state habeas corpus proceedings.  Portions of the motion are based on confidential attorney and investigative work product located in the files of Mr. Washington's previous counsel, and on information in those files which is protected by the attorney-client

privilege. Finally, portions of the motions are based on confidential attorney work product created by counsel in the course of preparing to represent Mr. Washington in federal habeas corpus proceedings. Disclosing the motions to the State would violate the attorney-client privilege and improperly reveal attorney work product. Doing so would also prematurely reveal the theory of Mr. Washington's case, the direction of his counsel's research, and the lines of authority he may invoke to support his claims. These revelations would result in a burden on Mr. Washington and an advantage to the State which would be unfair and unwarranted by statute.

**B.    Ensuring the confidentiality of proceedings related to the appointment of experts and investigators contributes to the fairness and accuracy of such proceedings by putting indigents on an equal footing with those who can retain their own investigators and experts.**

Because concerns about confidentiality and privilege are implicated in most federal criminal actions, the right of federal criminal defendants and habeas petitioners to request investigators and experts in *ex parte* proceedings has long been recognized by the federal courts. *See, e.g.*, FED. R. CRIM. P. 17(b) (specifying that hearings and orders in which indigent defendants request subpoenas are to be held *ex parte*); *Ake v. Oklahoma*, 470 U.S. 68, 82-83 (1985) (allowing defendants to make a threshold showing of the need for a psychiatric expert before the judge *ex parte*). In fact, Rule 17(b) did not originally authorize defendants to specify the grounds on which they were seeking subpoenas *ex parte*. *See United States v. Meriwether*, 486 F.2d 498, 505 (5th Cir.), *cert. denied*, 417 U.S. 948 (1973) (explaining original scope of 17(b)). However, Congress recognized that "the difficulty with this procedure was that it required indigent defendants to reveal many of the theories of their defense to the prosecution." *Id.* Therefore, Congress changed Rule 17(b) in 1966 to allow for *ex parte* hearings on the need for subpoenas. *Id.*

In *Meriwether*, the Fifth Circuit considered and rejected the prosecution's assertion that it was allowed to be present when the defense requested its subpoenas, and that the only impact of the *ex parte* language in Rule 17(b) was to prevent the prosecution from *contesting* the defendant's assertions. *Id.* at

506. The court reasoned: "The *ex parte* provision of the rule was not intended to protect the defendant from opposition from the prosecutor; it was intended to shield the theory of his defense from the prosecutor's scrutiny." *Id.* This reasoning underlying the need for *ex parte* proceedings in pretrial matters is settled Fifth Circuit law. *See, e.g., United States v. Edwards*, 488 F.2d 1154, 1162 (5th Cir. 1974) ("Dissemination of information critical to the defense permits the government to enjoy unauthorized discovery which is forbidden under our concept of criminal procedure."); *United States v. Sutton*, 464 F.2d 552, 553 (5th Cir. 1972) (reversing a district court's decision to deny the defendant an *ex parte* hearing to explain his reasons for requesting an investigator because "[t]he manifest purpose of requiring that the inquiry be ex parte is to insure that the defendant will not have to make a premature disclosure of his case" (citing *Marshall v. United States*, 423 F.3d 1315, 1318 (10th Cir. 1970))).

The fairness concerns militating in favor of *ex parte* proceedings for those who must ask the court for money are as compelling today as they have ever been. Recently, in the federal capital murder prosecution of Timothy McVeigh and Terry Nichols, United States District Judge Richard Matsch was asked to decide whether news organizations should be allowed access to defense requests for funds under the Criminal Justice Act. Judge Matsch recognized that the press had a First Amendment interest in the defendants' funding requests. *See United States v. McVeigh*, 918 F. Supp. 1452, 1459 (W.D. Ok. 1996) (summarizing policies in favor of allowing public access to ongoing criminal prosecutions). However, Judge Matsch also recognized the pressing need for indigents to preserve confidentiality in such requests. Defense attorneys, especially in capital cases, must conduct a "thorough factual investigation and legal analysis." *Id.* The investigation will inevitably generate information which is protected by the attorney-client privilege and the attorney work product doctrine. Judge Matsch observed that the newspaper organizations had "conceded that disclosing the services performed and the reason for them would inappropriately reveal the defendants' investigations and strategies." *Id.* at 1464.

This obvious consequence of public disclosure of funding requests, Judge Matsch noted, had

spurred the Administrative Office of the United States Courts to promulgate guidelines authorizing secrecy

for sensitive defense motions in federal criminal trials involving indigent defendants:

> *Ex parte* applications for services other than counsel under subsection (e) shall be heard *in camera*, and shall not be revealed without the consent of the defendant. The application shall be placed under seal until the final disposition of the case in the trial court. Maintaining the secrecy of the application prevents the possibility that an open hearing may cause a defendant to reveal his or her defense.

*Id*. at 1460 (quoting VII ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS, GUIDE TO JUDICIARY

POLICIES AND PROCEDURES, Ch. III, Part A, § 3.03 [hereinafter "Judiciary Policies"]).  The Judiciary

Policies specifically provide that defense funding requests are exempt from federal public-disclosure laws

such as the Freedom of Information Act, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552(a), if

revealing those requests would "compromise defense strategies, investigative procedures, attorney work

product, the attorney-client relationship or privileged information provided by the defendant or other

sources." *McVeigh*,  918 F. Supp. at 1461 (quoting JUDICIARY POLICIES, Ch. V, § 5.01).  Judge Matsch

held that these rules and policies required a decision that the purposes, and even the amounts, of the *ex*

*parte* funding requests of the defense must be kept secret. *Id*. at 1464-65.

    The context of Mr. Washington's request is obviously different from McVeigh's.  The principles

compelling a decision for secrecy, however, are identical.  In deciding matters related to preliminary

investigation and the appointment of counsel, federal courts routinely draw parallels between indigent

defendants awaiting trial and indigent capital petitioners preparing to file their federal habeas corpus

petitions.  *See, e.g., Bonin v. Calderon*, 59 F.3d 815, 837 (9th Cir. 1995) (determining whether a habeas

petitioner was denied effective assistance of counsel because of the district court's denial of § 848(q) funds

for pretrial investigation by applying the same standard the court had earlier developed for non-habeas

corpus cases); *Lawson v. Dixon*, 3 F.3d 743, 751 (4th Cir. 1993) (declaring that the court "agree[s]

without hesitation that ex parte proceedings are *the only proper means* of adjudicating appointment

motions [for experts] contemplated by the language of *both* the Title 18 [§ 3006(A)(e)] and Title 21 [§

848(q)] statutes") (emphasis added).

Clearly, it has always been understood that indigent litigants who must petition the court for adequate resources are entitled to be heard *ex parte* because such motions would reveal their theory of the case or breach guarantees of confidentiality.  This is so no matter whether they are preparing for a criminal trial on the merits or preparing to file a federal habeas corpus petition.  The question remains whether the amendment to § 848(q) was intended to change this understanding.  Although the legislative history surrounding the amendment is scant, there is no indication that, by making *ex parte* requests for investigators conditional on a showing of the need for confidentiality, the drafters of the bill intended to upset settled Federal law that defendants are entitled to have certain sensitive pretrial motions heard *ex parte*.  First, the plain language of the statute says no such thing.  The statute simply provides that, rather than being entitled automatically to *ex parte* consideration of their investigative requests, capital habeas petitioners now must make a "showing" of the need for confidentiality, which Mr. Washington has done.  An interpretation of the amended version of § 848(q) that required indigent petitioners to reveal their theory of the case, while allowing those with retained counsel to maintain appropriate confidentiality, would likely violate the Equal Protection Clause.  *See Meriwether*, 486 F.2d at 506 ("When an indigent defendant's case is subjected to pre-trial scrutiny by the prosecutor, while the monied defendant is able to proceed without such scrutiny, serious equal protection questions are raised . . . ."); *McVeigh*, 918 F. Supp. at 1459-61 (noting that the federal courts had adopted rigorous guidelines to protect the secrecy of defense funding requests in order to ensure that, as far as possible, indigent defendants stood on an equal adversarial footing to defendants able to finance their own representation).

The revisions to § 848(q)(10) indicate that Congress was motivated by a desire to monitor and possibly reduce costs.  *See* Antiterrorism Act, § 903 (b), (amending 21 U.S.C. § 848(q)(10) to impose an initial $7500 cap on investigative and expert assistance); § 903(a)(1)(A) (amending 18 U.S.C. § 3006(A)(4) to provide that "[t]he amounts paid under this subsection, for representation in any case, shall

7

be made available to the public"). If this is the case, their objective can be served without prejudicing the rights of habeas petitioners by keeping defense requests for funding confidential until after the completion of the litigation. *See* JUDICIARY POLICIES Ch. V, § 5.01 (providing that sensitive defense funding requests may be "placed under seal or otherwise safeguarded until after all judicial proceedings in the case are completed and for such time thereafter as the court deems appropriate"); *McVeigh*, 918 F. Supp. at 1464 (observing that there was "no doubt that the cost of the legal defense paid for from public funds" would become public "at some time," but that there were "important interests to be protected before the entry of final judgments in this case"). The Antiterrorism Act adopts balances the rights of the defendant against those of the public in the same manner, since it provides that the amount spent to litigate the habeas petition "shall be disclosed to the public, *after the disposition of the petition*." Antiterrorism Act, § 903(b) (amending 21 U.S.C. § 848(q)(10)(C)) (emphasis added).

In *Fuller v. Johnson*, 114 F.3d 491, 503-04 (5th Cir. 1997), the Fifth Circuit considered whether the "failure to provide ex parte proceedings as guaranteed by [the former] section 848(q) constitutes reversible error." The court noted that it had earlier held that the failure to provide *ex parte* hearings in the context of 18 U.S.C. § 3006A(e)(1) was reversible error. The court then concluded that "The district court's disregard of [the former] section 848(q)'s *ex parte* proceeding requirement and the court's reliance on the government's response were improper in this case." The district court should not have "allow[ed] the government to interfere in what should have been an ex parte determination." *Id*. at 504. The court eventually held that the denial of *ex parte* proceedings was harmless, because Fuller had not demonstrated an adequate need for expert assistance. *Id*. This case also differs in that the revised version of § 848(q), which makes *ex parte* proceedings conditional on a proper showing of the need for confidentiality, applies. Nevertheless, the reasoning of *Turner* indicates that if the Petitioner makes such a showing, it would be error for this Court to deny the benefit of *ex parte* proceedings to the Petitioner.

III.    **Most of the few federal district courts which have addressed the amendments to**

8

848(q)(9) have authorized capital habeas petitioners to request investigative or expert services *ex parte*.

Because the amendments to § 848(q)(9) are recent, and because they relate only to procedural matters, there is apparently no circuit authority interpreting them, and no published district court-level authority on the subject. Nevertheless, the Petitioner has acquired copies of three unpublished district court orders which all authorize an indigent habeas petitioner to proceed *ex parte* in his requests for expert or investigative assistance. In an order entered in the case of *Miller-El v. Johnson*, Civil No. 3:96-CV-1992-H (N.D. Tex. June 19, 1997) (Exhibit 1), the district court, interpreting the amended 848(q)(9), allowed an indigent habeas corpus petitioner to make his "proper showing of the need for confidentiality" *ex parte*, and permitted all further proceedings related to the appointment of investigators and experts to be conducted *ex parte*. The Respondent filed a "Motion to Strike Petitioner's Ex Parte Sealed Motions for Investigative Funds." The district court denied the motion. The court "recognize[d] that there is some ambiguity in the statute as to whether the request for ex parte consideration itself can be made in an ex parte motion," but resolved the ambiguity in favor of allowing *ex parte* consideration of such a request, and *ex parte* consideration of the investigative services requests themselves. Order at 1-2. The court reasoned that "[a]llowing the Respondent access to the confidential information contained in Petitioner's request to proceed ex parte directly conflicts with Congress' intent to authorize ex parte proceedings upon a proper showing." Order at 2.

The district court took a slightly more expansive view of the amendments in *Hawkins v. Calderon*, No. Civ. S-96-1155 LKK/PAN (E.D. Ca. May 6, 1997) (Exhibit 2). In that case, the District Court vacated a magistrate judge's order requiring the petitioner to serve the Respondent with copies of his motion seeking to proceed *ex parte*:

> The plain language of the amended 21 U.S.C. § 848(q)(9) excludes respondent from participation in petitioner's showing of the need for confidentiality. The limitation on ex-parte proceedings relates to the request for funding, not the determination of confidentiality. Moreover, the legislative history cited by respondent only demonstrates

9

that Congress intended to limit ex-parte communications for funding, which it did by
requiring a showing of confidentiality. The legislative history does not speak to how the
judge should determine the need for confidentiality, and Senator Specter's remarks
underscore the need to protect the petitioner from revealing matters which would be
prejudicial. Since the information used to demonstrate confidentiality will itself be
confidential, requiring petitioner to divulge it would be prejudicial. Thus, the magistrate
judge erred by requiring petitioner to serve his brief on respondent.

*Id.* at 4-5.

Another court construing the new Section 848(q)(9) held that the presence of attorney work

product in a funding application is sufficient to necessitate *ex parte* proceedings. "[A] federal habeas

petitioner shows sufficient need for *ex parte* proceedings when his funding applications reveal information

that would be protected from disclosure under the work product doctrine." *See* Order Denying

Respondent's Motion to Unseal Petitioner's Ex Parte Applications for Payment of Fees and Expenses . . .,

*Fudge v. Calderon*, CV-95-5369 (C.D. Cal. March 24, 1997) (Davies, J.), at 6 (attached as Exhibit 3).

The work product doctrine is, of course, firmly established by Supreme Court precedent, and

supported by strong public policy. Over fifty years ago, the Supreme Court explained the rationale

supporting the doctrine:

[I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary
intrusion by opposing parties and their counsel. Proper preparation of a client's case
demands that he assemble information, sift what he considers to be the relevant from the
irrelevant facts, prepare his legal theories and plan his strategy without undue and needless
interference. That is the historical and the necessary way in which lawyers act within the
framework of our system of jurisprudence to promote justice and to protect their clients'
interests. This work is reflected, of course, in interviews, statements, memoranda,
correspondence, briefs, mental impressions, personal beliefs, and countless other tangible
and intangible ways. . . . Were such materials open to opposing counsel on mere demand,
much of what is now put down in writing would remain unwritten. An attorney's
thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp
practices would inevitably develop in the giving of legal advice and in the preparation of
cases for trial. The effect on the legal profession would be demoralizing. And the interests
of the clients and the cause of justice would be poorly served.

*Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). This common law doctrine is incorporated in Rule 26 of

the Federal Rules of Civil Procedure:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or trial by or for another party or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. *In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.*

FED. R. CIV. P. 26(b)(3) (emphasis added). *See also* FED. R. EVID. 501 ("Except as otherwise . . . provided by an Act of Congress . . ., the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience").

As noted by the *Fudge* Court, "nothing in the language of the [Antiterrorism] Act indicates Congress intended to exclude common law privileges from applying to federal habeas corpus proceedings." *See Fudge* opinion (attached as Appendix 4), at 5-6. There is no indication in either the plain language of the statute or its legislative history that, by making *ex parte* requests for investigators conditional on a showing of the need for confidentiality, the drafters of the bill intended to upset settled federal law that defendants are entitled to have certain sensitive pretrial motions heard *ex parte*. In fact, one of the sponsors of Section 848(q)(9) emphatically stated the opposite: "[I]t is our intent here in this legislation that there not be a circumstance in which the defense is compelled to reveal, in front of the prosecutor, matters which would be prejudicial to his opportunity to present a defense." 141 CONG. REC. S7803-01, S7815 (daily ed. June 7, 1995) (statement of Senator Specter). The statute simply provides that, rather than being entitled automatically to *ex parte* consideration of their investigative requests, capital habeas petitioners now must make a "showing" of the need for confidentiality, which Mr. Washington has done herein.

Moreover, nothing in Section 848(q)(9) is inconsistent with the federal courts' well-established, inherent power to seal documents in its possession when appropriate. *See Nixon v. Warner*

11

*Communications, Inc.*, 435 U.S. 589, 598-99 (1978) ("[e]very court has supervisory power over its own records and files, and access has been denied where court files might have become the vehicle for improper purposes"); *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (quoting *Nixon*).

Setting aside slight differences in reasoning and emphasis, these three decisions each endorse a simple, practical notion: a proper showing of the need for confidentiality is made when a habeas petitioner must reveal work product or privileged information in order to adequately justify funding requests under 848(q)(9). Mr. Washington has made such a showing. Allowing him to proceed *ex parte* on funding requests after honors Congressional intent while avoiding any unfairness to indigent habeas petitioners.

**IV.     Conclusion.**

Mr. Washington has satisfied the requirement of amended § 848(q) by showing a need for confidentiality in the consideration of this motion. Compelling principles of fairness and constitutionality support his request. As the accompanying filing/s demonstrate, the Petitioner's funding requests contain information which justify their being heard *ex parte*. Accordingly, the Court should consider *ex parte* Mr. Washington's motions for investigative and/or expert assistance, and any further requests for assistance under 21 U.S.C. § 848(q)(9).

Respectfully submitted,

Andrew Hammel
Attorney-in-Charge
Member, U.S.D.C., Southern Dist.
Tx. Bar No. 00796698

Elizabeth Detweiler
Staff Attorney
Member, U.S.D.C., Southern Dist.
Tx. Bar No. 00793614

**TEXAS DEFENDER SERVICE**
412 Main Street, Suite 1150
Houston, TX  77002
TEL     (713) 222-7788

12

FAX    (713) 222-0260

Counsel for Willie Terion Washington

## CERTIFICATE OF CONFERENCE

I hereby certify that on the 22 day of July , 1998, I conferred with counsel for the Respondent on this motion.  She told me that she would oppose the motion.

## CERTIFICATE OF SERVICE

I hereby certify that on the 22th day of _July_ , 1998, I served a true and correct copy of the foregoing pleading, by depositing it in the United States Postal Service regular mail, to counsel for Respondent:

Gena Blount
Assistant Attorney General
Capital Ligitation Division
Office of the Attorney General
209 W. 14th Street
Price Daniel, Sr. Building, 8th Floor
Austin, Texas  78701

15

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIE TERION WASHINGTON, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| | § | |
| -VS- | § | CIVIL ACTION NO. H-98-085 |
| | § | |
| | § | |
| | § | |
| GARY JOHNSON, Director, Texas | § | |
| Department of Criminal Justice, | § | |
| Institutional Division, | § | |
| | § | |
| Respondent. | § | |

# EXHIBITS TO MOTION FOR LEAVE TO PROCEED *EX PARTE* ON REQUESTS FOR INVESTIGATIVE AND EXPERT ASSISTANCE

1



HOS.
ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JUN 18 1997

NANCY DOHERTY, CLERK
BY_____
                    Deputy

THOMAS JOE MILLER-EL

      Petitioner

v.

GARY JOHNSON, Director, Texas
Department of Criminal Justice
Institutional Division

      Respondent

Civil No. 3:96-CV-1992-H

## O R D E R

Before the Court is Respondent Johnson's Motion to Strike Petitioner's Ex Parte Sealed Motions for Investigative Funds, filed April 24, 1997; Miller-el's response, filed April 30, 1997; Respondent's reply, filed May 1, 1997; and Respondent's supplemental reply, filed May 16, 1997.

Respondent Johnson moves for an order striking Miller-el's request for investigative funds because such motions were made *ex parte*.

As amended by the Antiterrorism and Effective Death Penalty Act of 1996, 21 U.S.C. § 848(q)(9) allows a defendant's attorneys to obtain payment for investigative, expert or other services that are reasonably necessary for the representation of a defendant. If defendant's attorney seeks payment for services *ex parte*, he must show a need for confidentiality. See 21 U.S.C. § 848(q)(9)("No *ex parte* proceeding, communication, or request may be considered pursuant to this section unless a proper showing is made concerning the need for confidentiality."). The Court recognizes that there is some ambiguity in the statute as to whether the request for *ex parte* consideration itself can be made in an *ex parte* motion. However, the

Court interprets this language to mean that the request can be considered in an *ex parte* motion.

Allowing the Respondent access to the confidential information contained in Petitioner's request

to proceed *ex parte* directly conflicts with Congress' intent to authorize *ex parte* proceedings

upon a proper showing.  Accordingly, Respondent's motion is **DENIED**.

SO ORDERED.

DATED: June __18__, 1997.

BAREFOOT SANDERS
SENIOR U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF TEXAS

2



Hos.
ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**F I L E D**

JUN 1 8 1997

NANCY DOHERTY, CLERK
BY _____
          Deputy

THOMAS JOE MILLER-EL

     Petitioner

v.

GARY JOHNSON, Director, Texas
Department of Criminal Justice
Institutional Division

    Respondent

Civil No. 3:96-CV-1992-H

## O R D E R

    Before the Court is Respondent Johnson's Motion to Strike Petitioner's Ex Parte Sealed Motions for Investigative Funds, filed April 24, 1997; Miller-el's response, filed April 30, 1997; Respondent's reply, filed May 1, 1997; and Respondent's supplemental reply, filed May 16, 1997.

    Respondent Johnson moves for an order striking Miller-el's request for investigative funds because such motions were made *ex parte*.

    As amended by the Antiterrorism and Effective Death Penalty Act of 1996, 21 U.S.C. § 848(q)(9) allows a defendant's attorneys to obtain payment for investigative, expert or other services that are reasonably necessary for the representation of a defendant. If defendant's attorney seeks payment for services *ex parte*, he must show a need for confidentiality. See 21 U.S.C. § 848(q)(9)("No *ex parte* proceeding, communication, or request may be considered pursuant to this section unless a proper showing is made concerning the need for confidentiality."). The Court recognizes that there is some ambiguity in the statute as to whether the request for *ex parte* consideration itself can be made in an *ex parte* motion. However, the

5A

Court interprets this language to mean that the request can be considered in an *ex parte* motion.

Allowing the Respondent access to the confidential information contained in Petitioner's request

to proceed *ex parte* directly conflicts with Congress' intent to authorize *ex parte* proceedings

upon a proper showing.  Accordingly, Respondent's motion is **DENIED**.

      SO ORDERED

      DATED: June _18_, 1997.

                                                                                           BAREFOOT SANDERS

                                                                       SENIOR U.S. DISTRICT COURT JUDGE

                                                                       NORTHERN DISTRICT OF TEXAS

1

2

FILED

MAY 6 - 1997

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

11  JEFFREY JAY HAWKINS,

12          Petitioner,                    NO. CIV. S-96-1155 LKK/PAN

13      v.
                                           DEATH PENALTY CASE
14  ARTHUR CALDERON, Warden of
    California State Prison at             ORDER AFTER HEARING
15  San Quentin,

16          Respondent.

17  _____/

18      Petitioner's   motion   to   equitably   toll   the   statute   of

19  limitations and request for reconsideration came on regularly for

20  hearing on May 5, 1997, before the Honorable Lawrence K. Karlton,

21  Chief Judge Emeritus.   ANDREW LOVE appeared for petitioner;

22  BILL PRAHL and JANINE BUSCH appeared for respondent.

23      At hearing, the court read excerpts of the following order

24  into the record:

25      This case is before me on petitioner's motion to equitably

26  toll the statute of limitations and his request for reconsideration

1

1   of the magistrate judge's denial of his request to file an ex-parte

2   application for funds under seal.

3       The court is empowered to equitably toll the statute of

4   limitations under 28 U.S.C. § 2244(d). See Calderon v. U.S. Dist.

5   Court for the Central District of California, Rodney Gene Beeler,

6   97 Daily Journal D.A.R. 5165 (9th Cir. April 17, 1997).

7   Respondent's argument that petitioner does not have standing to

8   request equitable tolling because the limitations period has not

9   passed is implicitly rejected by the facts of Beeler, where the

10  court granted a motion to toll the statute prior to the expiration

11  of the limitations period.  Moreover, the imminence of the

12  expiration of the statute of limitations makes the threatened harm

13  "direct and immediate" rather than "speculative or hypothetical."

14  See Ayden Corp. v. Union of India, 940 F.2d 527, 528 (9th Cir.

15  1991); cf. Steffel v. Thompson, 415 U.S. 452, 459 (1974).  Thus,

16  petitioner's request is ripe for review. Id.

17      The question thus becomes whether there are "extraordinary

18  circumstances" beyond petitioner's control which make it impossible

19  for him to file a petition on time. See Beeler, supra (citing

20  Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir.

21  1997)); see also Ervin v. Los Angeles County, 848 F.2d 1018, 1019

22  (9th Cir. 1988), cert. denied, 489 U.S. 1014 (1989).

23      The court finds that there are extraordinary circumstances to

24  toll the limitations period from February 6, 1997, the time that

25  petitioner first filed his funding request, to May 5, 1997, the

26  time that the court resolves his motion for reconsideration, and

2

1  for the period of time from June 19, 1996, the date the petition
2  was filed, to July 8, 1996, the date petitioner was appointed
3  counsel.   It is the court's view that all time lost during the
4  search for counsel and the dispute concerning funds was necessary
5  for petitioner to file his petition within the statute of
6  limitations.  It also appears to this court that tolling is
7  appropriate because petitioner acted diligently, respondent has
8  notice of petitioner's claims, and the extension sought is for a
9  discrete period of time, thus making any claim of prejudice by
10 respondent unrealistic. See Ervin, 848 F.2d at 1019.  These factors
11 must be viewed in light of the facts peculiar to this case.

12      Tolling is appropriate for the period of time to find counsel
13 if the limitations period is too short to allow sufficient time to
14 prepare a pleading after counsel's appointment. See Harris v.
15 Walgreen' Distribution Center, 456 F.2d 588 (6th Cir. 1972), cited
16 in Baldwin County Welcome Center v. Brown, 466 U.S. 147, 151-152
17 (1984), reh'g denied, 467 U.S. 1231 (1984).  At oral argument,
18 counsel for petitioner indicated that this case requires the review
19 of two trial transcripts approximating 7500 pages.   The time
20 required to read, much less analyze such a lengthy record combined
21 with the fact that petitioner had no control over the delays at
22 issue here cumulate to require the granting of equitable relief.[1]

23

24      [1] Moreover, tolling would also be appropriate for the time
25 period during which petitioner's request for equitable tolling was
   under submission.  Since the court has not ruled on the request
   until nearly two months after it was filed, and one week prior to
26 the expiration of the limitations period, the length and timing of

3

1    Next, petitioner challenges the magistrate judge's
2  determination that he has not made a sufficient showing of
3  confidentiality and his requirement that petitioner serve his brief
4  regarding confidentiality on respondent.  The court reviews the
5  magistrate judge's non-dispositive pre-trial rulings under a
6  clearly erroneous or contrary to law standard. See 28 U.S.C.
7  § 636(b)(1)(A); Local Rule 72-303(f); United States v. Raddatz, 447
8  U.S. 667, 673 (1980).

9    The plain language of the amended 21 U.S.C. § 848(q)(9)
10 excludes respondent from participation in petitioner's showing of
11 the need for confidentiality.  The limitation on ex-parte
12 proceedings relates to the request for funding, not the
13 demonstration of confidentiality.  Moreover, the legislative
14 history cited by respondent only demonstrates that Congress
15 intended to limit ex-parte communications for funding, see 141
16 Cong.Rec. S7803-S7820, which it did by requiring a showing of
17 confidentiality.  The legislative history does not speak to how the
18 judge should determine the need for confidentiality, and Senator
19 Spector's remarks underscore the need to protect the petitioner
20 from revealing matters which would be prejudicial.  See 141
21 Cong.Rec. S7814-S7815.  Since the information used to demonstrate
22 confidentiality will itself be confidential, requiring petitioner

23
24 the delay has made it difficult for counsel, who must balance many
   strategic and funding considerations, to determine how to proceed
25 in a very complex process.  It goes without saying that petitioner
   had no control over the heavy docket of the court which was
26 responsible for the delay. See Alvarez-Machain v. United States,
   107 F.3d 696, 701 (9th Cir. 1997).

4

1    to divulge it would be prejudicial.   Thus, the magistrate judge

2    erred by requiring petitioner to serve his brief on respondent.

3        Since petitioner may have made different arguments concerning

4    confidentiality had he not been required to serve his brief on

5    respondent, the magistrate judge should make a new determination

6    of the need for confidentiality without respondent's participation.

7    In addition, since the magistrate judge is more familiar with this

8    matter and pre-petition issues in general, he should continue to

9    preside over all aspects of the case.

10        For all the above reasons, the court makes the following

11    ORDERS:

12        1.   The statute of limitations is TOLLED for one hundred and

13    seven (107) days;

14        2.   Petitioner's request for this court to take control of all

15    pre-petition matters is DENIED; and

16        3.   The magistrate judge is DIRECTED to make a new

17    determination of the need for confidentiality without participation

18    by respondent.

19        IT IS SO ORDERED.

20        DATED:   May 5, 1997.

21

22                               LAWRENCE K. KARLTON
                                 CHIEF JUDGE EMERITUS
23                               UNITED STATES DISTRICT COURT

24

25

26

                                    5

3

FILED
CLERK, U.S. DISTRICT COURT

MAR 2 4 1997

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

KEITH TYRONE FUDGE,

                Petitioner,

        v.

ARTHUR CALDERON,

                Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. CV 95-5369 JGD

ORDER DENYING
RESPONDENT'S MOTION TO
UNSEAL PETITIONER'S EX
PARTE APPLICATIONS FOR
PAYMENT OF FEES AND
EXPENSES; OR IN THE
ALTERNATIVE FOR A COURT
ORDER FINDING A PROPER
SHOWING HAS BEEN MADE
CONCERNING THE NEED FOR
CONFIDENTIALITY

On December 18, 1996, the Respondent filed its Motion to Unseal Petitioner's Ex Parte Applications for Payment of Fees and Expenses; or in the Alternative for a Court Order Finding a Proper Showing Has Been Made Concerning the Need for Confidentiality. After careful consideration of the parties' written submissions, the Court hereby DENIES the motion for reasons set forth below.

/

/

## Background

Petitioner Keith Tyrone Fudge is a California state prisoner who has been sentenced to death. In 1994, the California Supreme Court affirmed Fudge's conviction and death sentence for the murders of five persons. <u>People v. Fudge</u>, 7 Cal. 4th 1075 (1994).

On October 10, 1995, the Court appointed attorneys Jeannie R. Sternberg and Gary D. Sowards to represent Fudge in his habeas corpus death penalty proceedings pursuant to Local Rule 26.8.4(a) and the recommendation of the United States District Court Selection Board. On January 24, 1996, the Court ordered that all applications to authorize funding, and all documents in support of such applications, may be filed under seal.

On December 18, 1996, the respondent filed the instant Motion to Unseal Petitioner's Ex Parte Applications for Payment of Fees and Expenses; or in the Alternative for a Court Order Finding a Proper Showing Has Been Made Concerning the Need for Confidentiality ("Motion"). In the Motion, the respondent asks the Court to unseal two separate items filed by the petitioner. The first item is an Ex Parte Application for Payment of Fees and Expenses, filed under seal on November 20, 1996. The second item is an Ex Parte Application for Order Authorizing Funds for Ancillary Services, filed under seal on November 25, 1996.

In capital cases, 21 U.S.C. § 848(q) provides for the appointment of counsel, and the compensation and payment of appointed counsels' fees and litigation expenses reasonably necessary for the representation of habeas corpus petitioners. Subsection (q)(9) provides for authorization of a variety of

2

ancillary service upon a showing of reasonable necessity. However, subsection (q)(9) also provides that requests for such services may not be considered ex parte unless a need for confidentiality is shown.

In the Motion, the respondent asks the Court to unseal the Application for Funding of Ancillary Services under the assumption that it falls within the scope of section 848(q)(9). The respondent also asks the Court to unseal the Application for Payment of Fees and Expenses if any part thereof is encompassed by section 848(q)(9). Mot. at 4. In the event the motion is denied, the respondents seek a court order stating the Court's findings that the need for confidentiality has been shown, or that no part of the challenged documents are affected by section 848(q)(9).

The Application for Payment of Fees and Expenses seeks to justify the hours billed by Fudge's counsel for work performed on Fudge's case by counsel and their in-house paralegal and investigative staff. The Application for Order Authorizing Funds for Ancillary Services requests funds to engage the services of an audio sound laboratory and sound producer to remove background and extraneous noises from tapes. In endeavoring to support the respective funding requests, both applications contain extensive detail revealing the investigations to be performed, potential evidence to be developed from the investigations, the lawyers' theories, strategies and mental impressions in the case, and ways in which such evidence could support various claims cognizable in federal habeas corpus relief.

Discussion

A.  <u>Standard for Considering an Ex Parte Application,</u>
    <u>Communication or Request for Services</u>

1.  <u>Standard Under 21 U.S.C. § 848(q)(9)</u>

In capital cases, requests for necessary financial assistance are made pursuant to section 848(q) of Title 21 of the United States Code. Subsection (q)(9) provides:

> Upon a finding that investigative, expert or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses therefor under paragraph (10). No ex parte proceeding, communication, or request may be considered pursuant to this section unless a proper showing is made concerning the need for confidentiality. Any such proceeding, communication, or request shall be transcribed and made a part of the record available for appellate review.

Thus, the petitioner must demonstrate the necessity of confidential review before any funding application for expert, investigative or other services may be considered <u>ex parte</u>.

4

B.   Standa  is Met by Showing of Attorney Work Product

The Court has the discretion to control and seal documents within its possession, including the discretion to permit the filing of documents ex parte and under seal in order to preserve the work product doctrine.  See Crystal Grower's Corp. v. Dobbins, 616 F.2d 458, 461-62 (9th Cir. 1980).  Under the work product doctrine, documents and tangible things prepared in anticipation of litigation are protected from discovery where the mental impressions, conclusions, opinions, or legal theories of counsel are revealed.  Federal Rule of Civil Procedure 26(b)(3); Hickman v. Taylor, 329 U.S. 495 (1947).  This includes material that reveals counsel's strategy, intended lines of proof, and inferences drawn from interviews.  Schwarzer et al., California Practice Guide:  Federal Civil Procedure Before Trial § 11:38 (1996).

Under Federal Rule of Evidence 501, unless an act of Congress provides that common law privileges do not apply, privilege remains intact as governed by the principles of the common law as they may be interpreted by the courts in the light of reason and experience.

There appears to be no cases that address what constitutes a proper showing for confidentiality under section 848(q)(9).  In an unpublished order, one district court considered a petitioner's funding application under seal after noting that counsel's declaration identified attorney work product and other confidential information.  See McPeters v. Calderon, CV-F-95-5108-REC-P (E.D. Cal. 1996).  Moreover, nothing in the language

5

of the Act indi _es Congress intended to exclude common law privileges from applying to federal habeas corpus proceedings. It is implicit, therefore, that a federal habeas petitioner shows sufficient need for <u>ex parte</u> proceedings when his funding applications reveal information that would be protected from disclosure under the work product doctrine.  Further implicit in section 848(q)(9) is the intent that once the threshold showing has been made, a petitioner is entitled to proceed in a confidential manner.  Any such entitlement under the work product doctrine would effectively be nullified if work product were required to be disclosed in pre-petition proceedings to obtain funding.

B.   <u>The First Application:  Fudge's Ex Parte Application for Payment of Fees and Expenses</u>

The Application for Payment of Fees and expenses seeks compensation for hours billed by Fudge's counsel and for in-house investigative expenses in the course of preparing Fudge's habeas corpus petition.  Insofar as the application seeks payment for services rendered or expenses incurred by the attorneys themselves, section 848(q)(9), on its face, does not apply.

Insofar as the application seeks compensation for in-house investigators, however, this colorably constitutes billing for investigative services within the scope of section 848(q)(9). Notwithstanding this potential applicability, the Court finds that the Application meets the threshold requirements to qualify as attorney work product.  In the course of explaining and

6

1   justifying the    llings, the Application includes detailed
2   descriptions of intended lines of proof, assessments drawn from
3   interviews, counsel's judgment as to the amount of additional
4   investigation required, and mental impressions, legal theories
5   and strategies.  Such information constitutes the type of
6   impressions, opinions and legal theories intended to be protected
7   by the work product doctrine.  As such, a sufficient showing of
8   the need for confidentiality has been made within the meaning of
9   section 848(q)(9).

10      Consequently, the Motion is DENIED as to the first
11  Application.

12

13

14  C.   The Second Application:  Fudge's Ex Parte Application for
15       Order Authorizing Funds for Ancillary Services
16      The Ex Parte Application for Ancillary Services requests
17  funding for services to remove background noise from tapes which
18  counsel wish to transcribe as part of their investigation in
19  Fudge's case.  The Court will assume this falls within the scope
20  of § 848, as it colorably constitutes "investigative, expert or
21  other services," subject to section 848(q)(9).
22      However, in the course of explaining and justifying why
23  counsel needs the requested services, the Application describes
24  the evidence counsel believed could be derived from the tapes,
25  and legal claims to be pursued based on the evidence obtained.
26  Such information constitutes legal strategies and thought
27  processes protected under the work product doctrine.  A

1  sufficient showi   of the need for confidentiality has thus been
2  made within the meaning of section 848(q)(9).
3       Accordingly, the Motion is DENIED as to the second
4  Application.
5
6  D.   Applicability of 21 U.S.C. § 848(q)(9) to Pending Cases
7       The amendment to section 848 prohibits consideration of ex
8  parte applications except where a proper showing of the need for
9  confidentiality has been made.  This amendment is new.  It is an
10 addition to section 848(q)(9), enacted as part of the
11 Antiterrorism and Effective Death Penalty Act of 1996.[1]  The
12 government's Motion is predicated on the assumption that section
13 848(q)(9) applies to this case, even though the Act became
14 effective subsequent to the commencement of the instant
15 proceedings.
16      The Antiterrorism and Effective Death Penalty Act of 1996
17 ("Act") amended numerous statutes in various titles of the United
18 States Code, including the provision at issue here, 21 U.S.C.
19 § 848(q)(9).  The effective date of the Act is April 24, 1996.
20 The proceedings in this case were initiated prior to the
21 effective date of the Act.  It is not yet settled whether the Act
22 applies retroactively to proceedings initiated prior to the
23 effective date of the Act.
   ///

   _____

   [1]    Antiterrorism and Effective Death Penalty Act of 1996,
   Pub.L. 104-132, § 108, 110 Stat. 1214, 1226 (1996) [hereinafter
   "Act"].

1   However, in a recent order, issued on December 20, 1996, the
2   Ninth Circuit announced the holding of a forthcoming opinion that
3   is relevant to the retroactivity question.  In the order, the
4   Ninth Circuit held that other provisions of the Act, which amend
5   chapter 153 of Title 28 of the United States Code, do not apply
6   retroactively to cases filed in federal court prior to the Act's
7   effective date. Jeffries v. Wood, 103 F.3d 827 (9th Cir. 1996).
8   The full opinion will be issued shortly. Id.

9       The provision in question here, 21 U.S.C. § 848(q)(9), is in
10  a different Title than the statute addressed in the Ninth
11  Circuit's order.  Since the Ninth Circuit's rationale has not yet
12  been revealed, it is not clear whether the logic by which
13  retroactive application was barred in Jeffries would also apply
14  in the instant case.  It would be premature for the Court to
15  address the issue prior to the issuance of the full opinion in
16  Jeffries.

17      It is unnecessary to reach the issue, however, as the
18  government's Motion should be denied in any event, under the
19  statute's own terms.  The proper showing has been made pursuant
20  to § 848(q)(9) that the applications are entitled to
21  confidentiality.


                            Conclusion

22      The respondent's Motion to unseal the applications is
23  DENIED.

24      The respondent's Motion is predicated on the applicability
    of 21 U.S.C. § 848(q)(9), as amended by the Antiterrorism and

                                9

1   Effective Death   nalty Act of 1996.   The amended version of

2   section 848(q)(9) became effective after the commencement of the

3   instant proceedings.   The retroactive applicability of the

4   provision has not yet been addressed by the Ninth Circuit.

5        However, even on its own terms, section 848(q)(9) does not

6   dictate unsealing of the applications.   Under section 848(q)(9),

7   the Court may consider <u>ex parte</u> communications and requests where

8   a need for confidentiality is shown.   Such need is established

9   where an application contains attorney work product.   The two

10  applications in this instance do contain attorney work product,

11  and are entitled to protection from disclosure on that basis.   A

12  proper showing of the need for confidentiality has been made

13  under section 848(q)(9).   Accordingly, the Court will not issue

14  an order unsealing the petitioner's two applications.

15

16       IT IS SO ORDERED.

17

18  Dated: ___MAR 2 4 1997_____

19

                                        JOHN G. DAVIES
                                  United States District Judge

10

CV 95-5369-JGr    KEITH TYRONE FUDGE v. ARTHUR CALDERON, WARDEN

SERVICE LIST

KEITH TYRONE FUDGE
P.O. BOX D-73801
TAMAL, CA 94974

PETITIONER'S COUNSEL
[Appointed 10-10-95]
STERNBERG SOWARDS & LAURENCE
JEANNIE R. STERNBERG
GARY D. SOWARDS
604 MISSION STREET, 9TH FLOOR
SAN FRANCISCO, CA 94105

OFFICE OF THE ATTORNEY GENERAL
ALLISON H. TING
300 SO. SPRING STREET, 500-N
LOS ANGELES, CA 90013-1230

ARTHUR CALDERON, WARDEN
DENIS DULL
LEGAL AFFAIRS COORDINATOR
SAN QUENTIN STATE PRISON
SAN QUENTIN, CA 94964
(415) 456-0543

MARIE E. STRATTON
FEDERAL PUBLIC DEFENDER
1500 U.S. COURTHOUSE
312 NO. SPRING STREET
LOS ANGELES, CA 90012
(213) 894-2854
FAX: (213) 894-0081