

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

AUG 23 1999
MICHAEL N. MILBY, CLERK OF COURT

| | | |
|---|---|---|
| **WILLIE TERION WASHINGTON,**<br><br>**Petitioner,** | § | |
| **-VS-** | § | **C.A. No. H-99-0140** |
| **GARY JOHNSON, Director, Texas Department of Criminal Justice, Institutional Division,**<br><br>**Respondent.** | § | |

## SUPPLEMENTAL MOTION FOR DISCOVERY AND AN EVIDENTIARY HEARING

TO THE HONORABLE DAVID HITTNER, UNITED STATES DISTRICT JUDGE:

On May 12, 1999, Mr. Washington filed a Motion for Discovery. Dkt. #41. Based on briefing in the accompanied Petitioner's Amended Response to the Respondent's Answer and Motion for Summary Judgment, Mr. Washington seeks leave pursuant to Habeas Rule 6 to conduct discovery of the following items.

### I. Entire Files of All Police and Prosecutorial Agencies on Mr. Washington's case.

As Mr. Washington has described in court briefing, he submitted a formal request to the Harris County District Attorney's Office ("DA's Office") pursuant to the Public Information Act (TEX. GOV'T CODE Art. 552) for access to the entire case file on Mr. Washington's capital murder prosecution and his other convictions. The DA's Office disclosed some of the information in the case file to the undersigned counsel, but sought an opinion from the Office of the Attorney General of Texas as to certain portions of the case file which the DA's Office believed were





confidential. Among the information which the DA's Office sought to conceal were criminal history reports on various potential and actual State trial witnesses.

The Attorney General agreed that the criminal history information could be concealed. However, in an oversight, the Attorney General forwarded the confidential reports to the undersigned counsel. The reports contained information critical to Mr. Washington's allegations that the state violated *Brady v. Maryland*, 383 U.S. 83 (1963). For instance, one of the documents which the DA's Office sought to conceal bore handwritten notations confirming that the prosecution had discovered the criminal history of one of its witnesses weeks before Robert Stabe, the main prosecutor in Mr. Washington's case, declared in open court that none of the prosecution's witnesses had criminal histories. *See* Amended Response (filed with this pleading) at Part IV. Because the DA's Office only submitted "representative excerpts" from its file to the Attorney General's Office to review, there is no way of knowing how much additional *Brady* material may be contained in the prosecution's case file.

The Petitioner submits that the behavior of the DA's Office throughout this litigation provides ample reason to doubt the prosecution's assurances, given at various stages of this litigation, that it has already revealed all *Brady* information. For instance, the trial prosecutor assured the trial court that none of the state's witnesses had criminal records, even though there was at least one criminal history report on a state witness in the prosecution's case file when he gave this assurance, and there may have been several more. *See* Amended Response at 37-39. In state postconviction, an assistant district attorney declared in open court that she had reviewed the prosecution's case file to determine whether there was *Brady* evidence contained within it, but continued to conceal the criminal history reports. *Id.* at 40. Finally, in response to a Public Information Act request submitted during federal postconviction proceedings, the DA's Office *continued* to try to conceal this information, and would have succeeded in doing so but for the Attorney General's mistake. *Id.* at 47 n.15.

The *Brady* materiality of the evidence at issue here would not have been relevant to

everyday handwriting as of mid-1986, when the Ella Miller notation was written. Among the persons who should be required to submit exemplars are Robert Stabe, lead trial prosecutor, Keno Henderson, who was involved in jury selection, and Bill Horn, lead DA's Office investigator.[1]

The answer to this question will determine the level of bad faith shown by the prosecution. If the handwriting on the Ella Miller notation is Mr. Stabe's, that fact would support an allegation that he intentionally deceived both defense counsel and the trial court when he denied that any of his witnesses had criminal records in the June 30, 1986 pretrial hearing. Some courts have held that the degree of bad faith shown by the prosecution in suppressing exculpatory material is a proper factor in a court's analysis of the materiality of *Brady* evidence. *See* Amended Response at 51-52.

**B. Depositions of DA's Office personnel and other parties concerning *Brady* issues.**

Important questions relevant to a full and fair adjudication of the *Brady* issues in this case remain unresolved. The Respondent, for instance, has disputed whether the Ella Miller who was convicted of murder in 1960 is the same Ella Miller that testified at the punishment phase of Mr. Washington's capital murder trial. Answer at 104. Although Mr. Washington has described the compelling record proof that they are the same person, he has also sent an investigator out to contact Ms. Miller in order to ask her about her criminal history. *See* Amended Response at 45. She adamantly refused to cooperate. Should this Court entertain any doubt as to whether the two Ms. Millers are the same, it is clear that Mr. Washington, having used reasonable diligence to try to answer this question on his own, is entitled to court assistance to resolve the issue. Therefore, a deposition or evidentiary hearing should be authorized to compel Ms. Miller to testify under oath about her criminal record. If necessary, additional witnesses, such as the Harris County

[1] Alternatively, the parties could be served with interrogatories requiring them to admit or deny that they wrote the notations on the Ella Miller criminal record printout. The form of discovery that will answer the relevant questions most directly and efficiently can be agreed by the parties once this court grants Mr. Washington leave to conduct discovery pursuant to Habeas Rule 6.

Clerk, may be subpoenaed to shed more light on the facts surrounding the 1960 murder conviction. Concerning the actual suppression of the evidence concerning Ms. Miller (and concerning any other *Brady* material which may come to light as a result of discovery of the remainder of the prosecution's case file), depositions or hearing testimony of relevant DA's Office personnel is required to develop the facts surrounding *Brady* issues, and Mr. Washington specifically reserves the right to request such further factual development after discovery of the DA's Office's entire case file is ordered.

**III. Jurors and other persons present in the courtroom.**

The Respondent repeatedly dismisses Mr. Washington's evidence of juror misconduct and hostile courtroom atmosphere as hearsay. *E.g.*, Answer at 95. The jurors contacted by Mr. Washington refused to sign affidavits concerning the topics described in their affidavits. Once again, Mr. Washington has reached the limit of the factual development he can obtain on his own, and has justified court-ordered assistance to fully develop his claims. Depositions or hearing testimony from select jurors will help establish whether juror misconduct occurred, whether reasonably effective trial could would have been aware of that fact the jurors' post-verdict conduct, and what effect the hostile courtroom atmosphere had on the jury's deliberations. Because the requested testimony of the jurors will relate to (1) cognizable state-law juror misconduct (i.e., the jury's discussion of Mr. Washington's failure to testify, which jurors could have testified about in state court proceedings, see Amended Petition at 169-72) relevant to Mr. Washington's federal constitutional Sixth Amendment ineffective-assistance-of-counsel claim; or (2) their own perceptions of courtroom events; testimony from the jurors will not run afoul of FED. R. EVID. 606(b). *See, e.g., Isaacs v. Kemp*, 778 F.2d 1482, 1484-85 n.6 (11th Cir. 1985) (jurors may testify concerning "historical, objective fact[s]" and "irregularities occurring [outside the jury room]" without violating Rule 606(b)), *cert. denied*, 476 U.S. (1986). Deposition or hearing testimony from other courtroom personnel (such as the bailiff or court clerk) is also required to address Mr. Washington's hostile courtroom atmosphere claim..

Respectfully submitted,

Andrew Hammel
Attorney-in-Charge
Member, U.S.D.C., Southern Dist.
Tx. Bar No. 00796698

Elizabeth Detweiler
Staff Attorney
Member, U.S.D.C., Southern Dist.
Tx. Bar No. 00793614

TEXAS DEFENDER SERVICE
412 Main Street, Suite 1150
Houston, TX 77002
TEL : (713) 222-7788
FAX : (713) 222-0260

## CERTIFICATE OF CONFERENCE

I hereby certify that on the August 23, 1999, I conferred with counsel for the Respondent on this motion. She told me that she opposes the motion.

Andrew Hammel

## CERTIFICATE OF SERVICE

I hereby certify that on the 23 day of August 1999, I served a true and correct copy of the foregoing pleading by depositing it in United States Regular Mail for delivery to counsel for Respondent:

Ms. Christina Thompson
Assistant Attorney General
Office of the Attorney General
209 W. 14th Street
Price Daniel, Sr. Building, 8th Floor
Austin, Texas 78701

Andrew Hammel