IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
ENTERED

APR 3  2000

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| WILLIE TERION WASHINGTON | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-99-0140 |
| | § | |
| GARY JOHNSON, Director, Texas | § | |
| Department of Criminal Justice, | § | |
| Institutional Division, | § | |
| | § | |
| Respondent. | § | |

## ORDER

Pending before the Court are the Motion for Discovery (Instrument # 41), the

Supplemental Motion for Discovery and an Evidentiary Hearing (Instrument #51), and the

Supplemental Briefing on Inadequacy of State Court Fact Findings and Supplemental

Motion for Discovery and an Evidentiary Hearing (Instrument #63), filed by Petitioner

Willie Terion Washington.  Having considered the motions, submissions, record and

applicable law, the Court determines that the Motion for Discovery (Instrument #41)

should be granted in part and denied in part, the Supplemental Motion for Discovery and

an Evidentiary Hearing (Instrument #51) should be granted in part and denied in part, and

the Supplemental Briefing on Inadequacy of State Court Fact Findings and Supplemental

Motion for Discovery and an Evidentiary Hearing (Instrument #63) should be denied.

## BACKGROUND

Petitioner Willie Terion Washington ("Washington") was convicted of capital

(

murder on November 17, 1986, and sentenced to death on November 21, 1986, in the 180th District Court of Harris County, Texas, for the shooting death of Kiflemariam Tareh ("Tareh"). At trial, Washington was represented by Reo Harris, Jr. ("Harris"). Washington exhausted his direct appeal on March 1, 1989 and certiorari was subsequently denied by the United States Supreme Court.

Washington thereafter filed for state habeas relief on April 12, 1990. Washington's state petition for writ of habeas corpus was denied on September 7, 1997, after pending before the state courts for seven years. A second supplemental state petition for writ of habeas corpus was denied by the Texas Court of Criminal Appeals on January 14, 1998. Washington filed this, his first federal petition for writ of habeas corpus, on January 14, 1999. Washington has since filed three separate motions seeking leave of Court to conduct further discovery. Respondent Gary Johnson, Director of the Texas Department of Criminal Justice, Institutional Division, as represented by the Texas Attorney General's Office (the "State"), is apparently opposed to any such discovery, although the State only responded to Washington's first motion for discovery.

## ANALYSIS

Rule 6 of the Rules Governing Section 2254 Cases in the United State District Courts ("Rule 6") provides, in pertinent part, that a "party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants

2

leave to do so, but not otherwise." However, a habeas petitioner "is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rather, a district court is to make discovery determinations on a case-by-case basis. *See* Rules Governing Section 2254 Cases in the United States District Courts, Rule 6 advisory committee's note.

The United States Supreme Court has established a two-pronged test for considering a habeas petitioner's discovery request. *See Bracy*, 520 U.S. at 904. First, the petitioner must allege the elements of the claim which, if true, would entitle him to relief. *See Id.* Second, the petitioner must allege specific factual allegations that, again, if true and fully developed, demonstrate that he is entitled to relief. *See Id.* at 908-9. In the instant case, Washington has raised a plethora of issues for which he seeks habeas discovery. The Court will address each in turn.

<u>1. Bullets</u>

Washington seeks access to the two bullets entered in evidence against him at trial for independent forensic testing. Washington argues that such discovery is relevant to his ineffective assistance of counsel claim "based on failure to investigate the actual caliber of the bullets, and also to his *Giglio/Napue* claim that the State knowingly presented misleading testimony...." One of the bullets was recovered from the deceased, Tareh, the other from Yemane Kidane ("Kidane") who survived the incident.

To succeed on an ineffective assistance of counsel claim based on failure to

investigate, Washington must fulfill the traditional two-step *Strickland* analysis: (1) Washington must show that Harris's performance was deficient, falling below an "objective standard of reasonableness," and (2) Washington must show that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also East v. Scott*, 55 F.3d 996, 1006 (5th Cir. 1995). "Deficient performance is shown by proof that 'counsel made errors so egregious that he did not satisfy the requirements of 'counsel' under the sixth amendment." *East*, 55 F.3d at 1006 (quoting *Morlett v. Lynaugh*, 851 F.2d 1521, 1525 (5th Cir. 1988)). Typically, the prejudice prong will require the defendant to show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694.

The prosecution's case relied heavily upon the bullet recovered from Tareh's head. At trial, a witness for the prosecution, Firearms Examiner C.E. Anderson ("Anderson") of the Houston Police Department, testified that the caliber of the recovered bullet was either .38 or .357. However, Anderson never testified as to the basis for his opinion, that is, the measurements and/or data regarding the recovered bullet. The police recovered a .25 caliber weapon from Kidane at the crime scene and a Colt Cobra .38 special caliber revolver from Washington sometime after the homicide. Harris never obtained an independent expert to test the prosecution's ballistics case. Rather, he apparently relied solely upon the prosecution's inconclusive ballistics report in his defense of Washington.

4

(

In his motions, Washington presents ample evidence which suggests that Anderson's testimony may have been incorrect. The autopsy of the deceased victim revealed that the entry wound was only 3/16 inch in diameter, with a 1/16 inch margin of abrasion. Lloyd White ("White"), M.D., Ph.D., the current Medical Examiner for Nueces County, Texas, stated in his affidavit that a 3/16 inch entry wound would be "very unusual" for a .38 or .357 caliber bullet, that a 3/16 inch entry wound, however, was consistent with a .25 caliber bullet, that the "skull fragmentation," and "soot and stippling surrounding the wound" were not consistent with the wound pattern caused by a .38 or .357 bullet, that a .38 or .357 bullet would have at least caused an incomplete exit injury to the skull opposite the entrance (which was absent from the victim), and that failure of the bullet to traverse the brain was consistent with a .25 caliber bullet (which was consistent with the victim). White's analysis is bolstered by the initial police incident report, which provides that "[t]he suspects [sic] weapon was not recovered at this time. .... All that is known is that the weapon appears to be a small caliber weapon." Moreover, the autopsy report provides that the recovered bullet "was so deformed the caliber could not be given...." Finally, Washington has presented evidence that Kidane's .25 caliber weapon had been fired at least twice on the evening of the murder.

These facts suggest that the fatal bullet may have been .25 caliber, the same caliber as the handgun recovered from Kidane at the crime scene, and not .38 or .357 as suggested by Anderson. Harris's failure to independently investigate such a key piece of evidence

5

given the above facts is likely to be found deficient upon habeas review.  Further, if
independent analysis of the bullet does establish that it is .25 caliber, not .38 or .357,
Washington will have also established prejudice under the *Strickland* analysis.  The Court
therefore finds that Washington has asserted sufficient factual allegations that, if true and
fully developed, might entitle him to relief.  Discovery regarding the bullets is therefore
appropriate in order to fully develop Washington's habeas claims.

## 2. Entire Files of All Police and Prosecutorial Agencies

Washington's discovery request regarding all government files relating to his
prosecution is directly based upon two of Washington's habeas claims.  First, Washington
claims that the prosecutor violated *Batson v. Kentucky*, 476 U.S. 79 (1986), by striking
all of the minority venire-persons from the jury panel.   The prosecution's voir dire
material is therefore needed to fully develop this claim.   Second, Washington asserts that
the prosecution withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S.
83 (1963).  The police's and prosecution's files are therefore necessary to determine the
viability and scope of any possible violations.

To succeed on a *Batson* claim, Washington must first establish a *prima facie* case
of racial discrimination based upon the prosecution's use of peremptory challenges to strike
all minorities from the venire.  *See Batson*, 476 U.S. at 96-8.  To establish a *prima facie*
case, Washington must show that (1) he is a member of a distinct racial group, (2) the
prosecutor used peremptory challenges to remove members of Washington's race from the

jury panel, and (3) other facts and circumstances surrounding the proceeding to raise an inference that the prosecutor discriminated in his or her selection of the jury pool. *See Batson*, 476 U.S. at 96-7. The Supreme Court modified *Batson* to allow a defendant of a race different than that of the struck venire-persons to have standing to raise a challenge. *See Powers v. Ohio*, 499 U.S. 400, 415 (1991). Once a defendant establishes a *prima facie* case of discrimination, the burden shifts to the prosecution to provide non-discriminatory reasons for the exercise of peremptory challenges. *See Batson*, 476 U.S. at 97. The trial court then determines whether purposeful discrimination has occurred. *See Id.* at 98; *see also Hernandez v. New York*, 500 U.S. 352, 258-59 (1991).

It is clear from the proffered evidence that the prosecution used its peremptory challenges to strike five minority venire-persons: three African-Americans and two Hispanics. It is also uncontested that the resulting jury was all white. Each juror that was struck from the panel in the instant case was questioned extensively by both the prosecution and defense. The totality of these facts do not suggest that more investigation is required in this matter.

To succeed on a *Brady* claim, Washington "must demonstrate that (1) the prosecution suppressed or withheld evidence (2) favorable to the defense and (3) material to guilt or punishment." *East v. Johnson*, 123 F.3d 235, 237 (5th Cir. 1997) (citing *Westley v. Johnson*, 83 F.3d 714, 725 (5th Cir. 1996)). "Undisclosed evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense,

(

the result of the proceeding would have been different.'" *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). "A reasonable probability is established when the suppression of evidence 'undermines confidence in the outcome of the trial.'" *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (remaining citation omitted)).

Initially, Washington's counsel requested in this federal matter that the District Attorney's office turn over its entire case file for habeas review. The District Attorney's office denied Washington's request, turning over only limited information. The District Attorney's office, based upon a recommendation by the Texas Attorney General's office that such material need not be disclosed, refused to disclose to Washington, amongst other things, the "criminal history reports on various potential and actual state trial witnesses." However, in an oversight, the Texas Attorney General's office mistakenly also forwarded its recommendations to counsel for Washington. These recommendations revealed that some of the prosecution's witnesses did, in fact, have criminal records that were not disclosed to the defense. Moreover, Washington proffered evidence to this Court that the prosecution stated in open court, pre-trial, that none of its witnesses had criminal histories. It appears that such a statement was, in fact, not accurate.

The State responds that impeachment evidence, specifically criminal histories, do not fall within the purview of *Brady*, as Washington could have discovered the information himself through the exercise of due diligence. However, the State's argument is directly

8

(

contrary to controlling Fifth Circuit precedent.[1]  In *United States v. Auten*, 632 F.2d 478,

480 (5th Cir. 1980), the court held "that the prosecution should bear the burden of

obtaining and disclosing the criminal history of its witnesses 'in the interest of inherent

fairness.'" *Id.* (quoting *Calley v. Callaway*, 519 F.2d 184, 223 (5th Cir. 1975)); *see also*

*East v. Scott*, 55 F.3d 996, 1003 (5th Cir. 1995).  "The Court based its holding on its

recognition that the prosecution has ready access to certain types of information that are

often crucial to the defense." *East*, 55 F.3d at 1003.  Finally, "the prosecution is deemed

to have knowledge of any criminal history information pertaining to its witnesses that

would be revealed by a routine check of FBI and state crime databases, including a

witness' state 'rap sheet.'" *Id.* (citing *Auten*, 632 F.2d at 480).

It is clear that Washington has established specific allegations that satisfy the first

two elements of a Brady violation.  The only remaining issue is whether the concealed

information is material.  The Fifth Circuit has held that "when the testimony of a witness

who might have been impeached by undisclosed evidence is strongly corroborated by

additional evidence, the undisclosed evidence generally is not found to be material." *East*,

123 F.3d at 239 (citing *Wilson v. Whitley*, 28 F.3d 433, 439 (5th Cir. 1994)).  "In contrast,

when 'withheld evidence would seriously undermine the testimony of a key witness on an

essential issue or there is no strong corroboration, the withheld evidence has been found

_____

[1] Further, the State did not notify the Court of this fact, despite its obligation to
do so pursuant to Texas Disciplinary Rule of Professional Conduct 3.03(a)(4).

9

to be material.'" *Id.* (quoting *Wilson*, 28 F.3d at 439 (remaining citation omitted)).  In its

sole response to Washington's motions, the State did not assert any additional evidence

which would corroborate the testimony of the witness in question.  Moreover, the State did

not identify for the Court the extent of the concealed *Brady* information.  The Court

therefore finds that Washington has asserted sufficient factual allegations that, if true and

fully developed, might entitle him to relief.  Discovery regarding possible Brady material

contained in the law enforcement and prosecution case files associated with Washington's

case is therefore appropriate in order to fully develop Washington's habeas claims.

However, Washington's related *Brady* discovery requests regarding handwriting exemplars

and depositions of the staff of the District Attorney's office are denied at this time.

### 3. DPS Records

Washington seeks access to the "official Department of Public Safety (DPS) records

for all seated jurors and potential jurors who were stricken from the venire[]" in order to

"conclusively demonstrate the race of each juror."  Alternatively, Washington seeks to

depose each juror in order to establish race.  The Court denies these requests.  Thus far,

the State has not contested the alleged races of the stricken venire-persons, nor the fact that

the resulting jury was all white.

### 4. Records of the Houston Police Department or Harris County Sheriff

Washington seeks official records from either the Houston Police Department or the

Harris County Sheriff regarding known drug activity at or near the scene of the homicide,

10

(

Mike's Food Mart, during the relevant time period.  Washington argues that he needs the information "so as to further support his claim that a viable defensive theory could have been presented if trial counsel had conducted adequate investigation."  Washington must therefore once again fulfill the traditional two-step *Strickland* analysis of deficient performance and prejudice.  *Strickland*, 466 U.S. at 687.

In evaluating a trial counsel's performance on collateral review, courts "must be highly deferential to counsel's trial tactics and decisions."  *East*, 55 F.3d at 1006 (citing *Valles v. Lynaugh*, 835 F.2d 126, 128 (5th Cir. 1988)).  Moreover, a court "must also be particularly careful to avoid 'the distorting effects of hindsight.'"  *Id.* (quoting *Valles*, 835 F.2d at 128).  Although Washington presents evidence that drug activity did take place at Mike's Food Mart, he does not provide any justification for the requested discovery.  Indeed, he does not assert any specific factual allegations, that if true, would entitle him to relief.  The Court is not prepared to allow Washington to go on a fishing expedition in an attempt to bolster a potential "drug deal gone bad" defense.  Further, the proffered evidence suggests to the Court that such a defense was available at the time of trial, and Harris made a tactical decision not to pursue it.  Washington is not entitled to the requested discovery from the Houston Police Department or the Harris County Sheriff.

### 5. Depositions

Washington seeks to depose Reo Harris, Jr., Washington's trial counsel, regarding his failure to provide adequate investigation.  Washington must therefore once again fulfill

11

the traditional two-step *Strickland* analysis of deficient performance and prejudice. *Strickland*, 466 U.S. at 687.

Washington has provided the Court with evidence noting Harris's past inadequacies regarding legal representation, some of which has already been addressed *supra*. Additionally, the State Bar of Texas has reprimanded Harris on numerous occasions for a variety of improper attorney conduct, including neglecting a legal matter and knowingly failing to respond to a lawful request for information from a disciplinary on three separate occasions. The most glaring evidence of possible inadequate representation, however, are Harris's two affidavits proffered by the State in response to the original state habeas petition. Although the State argues that the two "affidavits do not controvert each other" and the second affidavit is merely more "polished" than the first, the Court finds that significant discrepancies exist between the two. The Court therefore finds that additional discovery is warranted regarding this issue and deposing Harris is appropriate.

Washington further desires to depose numerous other individuals, including Judge Pat Lykos, the presiding judge at Washington's criminal trial, Shirley Cornelius, an Assistant District Attorney involved in the case, Gary Reger, Washington's attorney for his state habeas petition, and certain court personnel and jurors. Washington asserts that such discovery will allow him to further develop his habeas claims regarding potential due process violations. However, Washington's counsel was able to examine three of these individuals, Judge Lykos, Shirley Cornelius, and Gary Reger, regarding this case, at a

12

(

recent recusal hearing in state court. Moreover, Washington has not alleged the elements of the due process claims which, if true, would entitle him to relief. *See Bracy*, 520 U.S. at 904. Nor has Washington alleged specific factual allegations that, if true and fully developed, demonstrate that he is entitled to relief. *See id.*, at 908-9. Washington has therefore failed to show "good cause" for these discovery requests.

Finally, Washington seeks discovery regarding materials from Judge Lykos's 1993 campaign for the position of Attorney General of Texas. Washington claims that Judge Lykos's pro-death penalty campaign platform portrays an anti-defendant judicial bias which precluded her from fairly adjudicating Washington's trial. Washington relies on *Bracy* for the proposition that "when [a] federal petitioner articulates a plausible theory of judicial bias and supports [the] theory with specific allegations and facts tending to bolster it, he has show 'good cause' for discovery under Rule 6(a)." Although this general paraphrase of *Bracy* is essentially correct, if fails to properly assert the process of analysis established by the Supreme Court in that case. Washington has provided evidence that Judge Lykos argued for strict crime control and enforcement of the death penalty during her campaign. However, he has not alleged specific factual allegations regarding how this affected his case. Moreover, Washington has not alleged the elements of the due process claims which, if true, would entitle him to relief. *See Bracy*, 520 U.S. at 904. Nor has Washington alleged specific factual allegations that, if true and fully developed, demonstrate that he is entitled to relief. *See id.*, at 908-9. Washington has therefore failed

13

to show "good cause" for these discovery requests.

Further, the Court denies Petitioner's request for an evidentiary hearing. Accordingly, the Court hereby

ORDERS that the Motion for Discovery (Instrument # 41) is GRANTED IN PART AND DENIED IN PART and that the Supplemental Motion for Discovery and an Evidentiary Hearing (Instrument #51) is GRANTED IN PART AND DENIED IN PART. The Harris County Sheriff's Department will produce the two bullets from the above entitled case and allow Washington to conduct such independent testing as needed. The Texas Attorney General's Office, Harris County District Attorney's Office and any applicable law enforcement agencies, including the Houston Police Department and the Harris County Sheriff's office, will produce for inspection and copying by counsel for Washington, all documents related to Washington's case consistent with this opinion. Washington is granted leave of Court to depose Mr. Reo Harris, Jr. All relief not specifically granted herein is DENIED. The Court further

ORDERS that the Supplemental Briefing on Inadequacy of State Court Fact Findings and Supplemental Motion for Discovery and an Evidentiary Hearing (Instrument #63) is DENIED.

14

SIGNED at Houston, Texas, on this the **31** day of March, 2000.

DAVID HITTNER
United States District Judge

15

ClibPDF - www.fastio.com